UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MANUEL SOTO-ESTRADA,

                    Petitioner,

                                        Case No. 20-cv-121-pp

        v.

UNITED STATES OF AMERICA,

                    Respondent.

**ORDER DENYING AMENDED MOTION TO VACATE, SET ASIDE OR
CORRECT SENTENCE UNDER 28 U.S.C. §2255 (DKT. NO. 6), DECLINING
TO ISSUE A CERTIFICATE OF APPEALABILITY AND DISMISSING CASE**

On January 27, 2020, the petitioner filed a motion to vacate, set aside or

correct his sentence under 28 U.S.C. §2255, challenging his conviction in

United States v. Soto-Estrada, Case No. 14-cr-71 (E.D. Wis.). Dkt. No. 1 at 2.

## I.      Background

On March 18, 2014, the grand jury indicted the petitioner and co-

defendants Roberto Rangel Garcia, Adan Cabrera, Angel Garcia, Marcellino

Mendez and Daniel Contreras. United States v. Soto-Estrada, Case No. 14-cr-

71 (E.D. Wis.), Dkt. No. 1. Count One of the indictment charged the petitioner,

Roberto Rangel Garcia, Daniel Contreras and Angel Garcia with conspiracy to

possess and distribute fifty grams or more of methamphetamine and one

hundred grams or more of heroin, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(A)

and 846, and 18 U.S.C. §2. Id. at 1-2. Count Two charged the petitioner and

Angel Garcia with distributing heroin in violation of 21 U.S.C. §841(a)(1) and

1

(b)(1)(C) and 18 U.S.C. §2. Id. at 3. Count Three charged the petitioner with distributing heroin in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C). Id. at 4. Count Four charged the petitioner and Angel Garcia with possessing with intent to distribute five hundred grams or more of cocaine in violation of 21 U.S.C. §841(a)(1) and (b)(1)(B), and 18 U.S.C. §2. Id. at 5. Count Five charged the petitioner, Roberto Rangel Garcia and Daniel Contreras with distributing fifty grams or more of methamphetamine in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A), and 18 U.S.C. §2. Id. at 6.

On August 2, 2017, the petitioner (represented by Attorney Martin Pruhs) signed a plea agreement. Dkt. No. 121 at 12. On August 11, 2017, the government filed an information charging the petitioner with conspiracy to possess with the intent to distribute one hundred grams or more of heroin in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B) and 846. Dkt. No. 120. The plea agreement was filed the same day. Dkt. No. 121. The agreement explained that the petitioner had read and fully understood the nature and elements of the crimes set forth in the indictment and information. Id. at ¶3. It stated that Attorney Pruhs had fully explained those charges and the terms and conditions of the plea agreement to the petitioner. Id. The agreement stated that the petitioner voluntarily was pleading guilty to one count of conspiracy to distribute one hundred grams or more of heroin in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(B) and 846, and 18 U.S.C. §2. Id. at ¶4. The petitioner acknowledged, understood and agreed that he was guilty of that offense. Id. at ¶6. He admitted that facts attached to the plea agreement established his guilt

beyond a reasonable doubt and were true and correct. <u>Id.</u> The agreement stated that the petitioner understood and agreed that the maximum penalty for the offense to which he was pleading was forty years of imprisonment, a $5,000,000 fine and a lifetime term of supervised release; he understood that the offense to which he was pleading carried a mandatory minimum penalty of five years of imprisonment and four years of supervised release. <u>Id.</u> at ¶7. The parties understood and agreed that for the maximum penalties to apply, the government would have had to prove beyond a reasonable doubt that the offense to which the petitioner was pleading guilty involved at least one hundred grams of heroin. <u>Id.</u> at ¶8.

The agreement also laid out the elements of the charges. <u>Id.</u> at ¶9. It said the parties understood and agreed that in order to sustain the conspiracy charge, the government would have had to prove beyond a reasonable doubt that (1) the conspiracy existed and (2) the petitioner and his co-defendants knowingly and intentionally became members of the conspiracy with intent to further the conspiracy. <u>Id.</u>

The petitioner acknowledged, understood and agreed that the court would sentence him under the Sentencing Reform Act and according to the Sentencing Guidelines. <u>Id.</u> at ¶11. The petitioner acknowledged and understood that at the time he was entering his plea, the parties might not have had complete information regarding his criminal history. <u>Id.</u> at ¶12. The petitioner acknowledged and agreed that Attorney Pruhs "discussed the applicable sentencing guidelines provisions with him to [the petitioner's] satisfaction." <u>Id.</u>

The petitioner acknowledged and understood that he could not move to withdraw his plea based on the sentencing court's determination of his criminal history. Id. at ¶13. He acknowledged and understood that the agreement did not create a right to be sentenced within a particular guideline range, and that the court could impose a sentence above or below the guideline range. Id. at ¶14. The petitioner acknowledged, understood and agreed that the sentencing court could consider his relevant conduct when calculating the guidelines range, "even if the relevant conduct is not the subject of the offenses to which [he] [was] pleading guilty." Id. at ¶15. The parties agreed to recommend to the sentencing court that the relevant conduct is "at least 1 kilogram of a mixture and substance containing heroin." Id. at ¶16.

The parties jointly agreed to recommend a base offense level of 30 under U.S.S.G. §2D1.1(c)(5), based on distribution of at least one kilogram of heroin; a 2-level increase under U.S.S.G. §2D1.1(b)(1) for possession of a firearm and a 3-level decrease for acceptance of responsibility under U.S.S.G. §§3E1.1(a) and (b). Id. at ¶¶17-19. Both parties reserved the right "to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors." Id. at ¶20. The government agreed to recommend no more than one hundred twenty months of imprisonment, while the petitioner agreed to recommend no less than one hundred months of imprisonment. Id. at ¶22. The petitioner acknowledged,

understood and agreed that the plea agreement would not bind the sentencing court, and that the sentencing court would "make its own determinations regarding any and all issues related to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth" in the agreement. Id. at ¶23. The petitioner acknowledged and agreed that he could not move to withdraw his plea "solely as a result of the sentence imposed by the court." Id. at ¶24.

The petitioner acknowledged and understood that by pleading guilty, he was waiving his rights to (1) argue claims through pretrial motions, (2) a speedy and public trial, (3) a jury of twelve random citizens that would presume his innocence and reach a unanimous verdict, or to a judge that would hear all evidence, find facts and determine the petitioner's guilt beyond a reasonable doubt, (4) cross-examine the government's evidence and present his own evidence, (5) decline to testify with no resulting inference of guilt. Id. at ¶¶30-31. The petitioner acknowledged "the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights." Id. at ¶31. He acknowledged and understood that by finding him guilty, the court might deprive him of rights "including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured institution." Id. at ¶32. By signing the plea agreement, the petitioner knowingly and voluntarily waived "all claims he may have based upon the statute of limitations, the Speedy Trial Act, [] the speedy trial provisions of the Sixth Amendment" and venue. Id. at ¶¶33-34.

The parties acknowledged, understood and agreed that the plea agreement did not require the government "to take, or not to take, any particular position in any post-conviction motion or appeal." Id. at ¶36. Finally, the petitioner acknowledged, understood and agreed that he would "plead guilty freely and voluntarily because he [was] in fact guilty," and that "no threats, promises, representations, or other inducements ha[d] been made, nor agreements reached, other than those set for in [the] agreement, to induce [the petitioner] to plead guilty." Id. at ¶42.

Facts attached to the plea agreement reflected that

> [o]n March 2, 2016, case agents arrested [the petitioner] at his residence on West Scott Street in Milwaukee, WI. When asked if he had any weapons on his person, [the petitioner] replied that he had a gun in his bedroom. When case agents failed to find a gun in [his] bedroom, he directed them to the garage where they located a 9mm pistol.

Id. at 18-19.

On August 29, 2017, the court conducted an extensive change-of-plea colloquy. Dkt. No. 128. The petitioner appeared in person with Attorney Pruhs. Id. at 1. Susan Rascon appeared as the interpreter. Id. The court's minutes reflect that the court placed the petitioner under oath, reviewed the plea agreement with him, questioned him and "recounted that the charged involved a maximum prison term of forty years and a maximum fine of $5,000,000, . . . carried a special assessment of $100 and a minimum of four years of supervised release." Id. "[T]he court found that [the petitioner] understood his trial rights, the penalties associated with the charge, the possible civil ramifications of a conviction, and the uncertainty of his ultimate sentence." Id.

"The court also found that [the petitioner] entered the plea knowingly and voluntarily, without threats or promises." Id. "The court accepted [the petitioner's] plea of guilty, and found [the petitioner] guilty of the offense charged in the information." Id.

The petitioner's presentence investigation report reiterated how case agents asked the petitioner whether he had any weapons, and how the petitioner directed agents to a pistol in his garage. Dkt. No. 151 at ¶37. The report discussed the applicable sentencing enhancement for the possession of a weapon:

> Pursuant to USSG §2D1.1(b)(1), if a dangerous weapon or firearm was used, a two level enhancement is given. Application Note 11(A) states: "the enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." In this case, [the petitioner] admitted to law enforcement having a firearm. Further investigation revealed a 9mm pistol in his garage. [The petitioner] stipulated to this enhancement in the Plea Agreement. Further, before accepting [the petitioner's] guilty plea, the Court outlined the stipulations agreed to by th[the petitioner] including this enhancement. Therefore, pursuant to USSG §2D1.1(b)(1), a two level increase for possession of a firearm shall be applied.

Id. at ¶64.

On January 11, 2018, the court sentenced the defendant. The petitioner appeared in person with Attorney Pruhs. Dkt. No. 155. Alexandra Wirth appeared as an interpreter. Id. at 1. Attorney Pruhs confirmed that he and the petitioner had reviewed the presentence investigation report, a "letter from counsel for [the petitioner] with attached certificates and completions of courses by [the petitioner] while incarcerated, and the letter from [the

petitioner]." Id. The court explained that the sentencing guidelines in the presentence investigation report were advisory, but that the law required the court to begin its sentencing analysis with those advisory guidelines and consider their application to the factors in §3553. Id. Staring with the base offense level, the court considered sentencing enhancements; it noted that "both the plea agreement and the presentence report recommended a base offense level of 30 under §2D1.1(c)(5) and a 2-level enhancement for possession of a firearm under §2D1.1(b)(1)." Id. The court explained that "[b]oth documents provided for a 2-level reduction for acceptance of responsibility under §3E1.1(a), and the government moved in court for another 1-level reduction under §3E1.1(b)." Id. The court granted that motion and noted that "[n]one of the parties objected to the adjusted offense level of 29." Id. The defendant's criminal history category was I; an adjusted offense level of 29 in criminal history category I resulted in an advisory sentencing range of 87 to 108 months, and the offense carried a mandatory minimum sentence of sixty months (five years). Id. at 1-2.

Each party made sentencing recommendations; the government recommended one hundred twenty months while the petitioner argued for a sentence of "not less than one hundred months of incarceration." Id. at 2. The petitioner also "spoke to the court on his own behalf." Id. "The court concluded that a sentence of eighty-seven months of incarceration with credit for time served, followed by five years of supervised release, was sufficient but not more than necessary to address the §3553 factors." Id. "The court advised [the

petitioner] that he had a right to appeal, that he had a limited time in which to do so, and that he should discuss his appeal rights with his attorney." Id. Last, the court dismissed the indictment against the petitioner. Id.

The court entered judgment on January 22, 2018. Dkt. No. 156. The court's judgment reflected the sentence: eighty-seven months of incarceration followed by five years of supervised release. Id. at 2-3. The petitioner did not appeal.

Two years later, the petitioner filed this motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255. Soto-Estrada v. United States, Case No. 20-cv-121 (E.D. Wis.), Dkt. No. 1. On July 13, 2020, the court ordered the petitioner to file an amended §2255 motion because he had written "none" in the "Grounds for Relief" sections of the form petition. Dkt. No. 5. Three weeks later, the petitioner filed an amended §2255 motion and a supporting brief. Dkt. No. 6. In the amended motion, the petitioner states that he did not appeal his conviction because his attorney told him that he had no grounds to do so. Id. at 6-8. As grounds for relief, the petitioner asserts that his lawyer provided him ineffective assistance by failing to object to the sentencing enhancement for possession of a firearm, and for failing to explain the effect of the enhancement to the petitioner. Id. at 8-11.

## II. Analysis

### A. Standard

The court must first review—or "screen"—the motion under §2255. Rule 4 of the Rules Governing Section 2255 Proceedings provides that

> [i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

A petitioner seeking relief under §2255 must allege either that the sentence violated the Constitution or laws of the United States, that the court was without jurisdiction, that the sentence exceeded the maximum authorized by law or that the sentence is otherwise subject to collateral attack. 28 U.S.C. §2255(a). At the screening stage, the court considers whether the petitioner has raised claims that can be adjudicated in a §2255 proceeding, whether the petitioner has exhausted his claims and whether he filed the motion within the limitations period.

### B. Procedural Default

"A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016) (citing Sandoval v. United States, 574 F.3d 847, 850 (7th Cir. 2009)).

> A federal prisoner cannot bring defaulted claims on collateral attack unless he shows both cause and prejudice for the default. *Hale v. United States*, 710 F.3d 711, 713 (7th Cir. 2013); *Grant v. United States*, 627 F.3d 677, 683 (7th Cir. 2010). Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is "actually innocent" of the crimes of which he was convicted. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008).

Id.

But because "claims of ineffective assistance of counsel, by their very nature, are almost 'invariably doom[ed]' on direct appeal" because they often require additional evidence beyond the trial record, the Seventh Circuit "permit[s] these claims, in most instances, to be raised for the first time on collateral review." <u>Delatorre v. United States</u>, 847 F.3d 837, 843 (7th Cir. 2017) (quoting <u>United States v. Gilliam</u>, 255 F.3d 428, 437 (7th Cir. 2001)); <u>see also</u> <u>Massaro v. United States</u>, 538 U.S. 500, 505 (2003). The petitioner argues that his lawyer provided ineffective assistance of counsel by failing to object to the 2-level enhancement for possession of a firearm under U.S.S.G. §2D1.1(b)(1). Dkt. No. 6 at 9. He also asserts that his lawyer was ineffective for failing to show him the portion of the plea agreement that contained the 2-level enhancement for the firearm. <u>Id.</u> at 8.

Even though he did not appeal, and thus procedurally defaulted on his ineffective assistance claims, the court concludes that he is not barred from raising them for the first time in a §2255 motion.

C.    <u>Statute of Limitations</u>

Section 2255 imposes a one-year limitation period for filing motions to vacate, set aside or correct federal sentences. The one-year period begins on the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or law of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f). The petitioner has not based his petition on newly discovered evidence under §2255(f)(4); he has not alleged that an impediment prevented him from filing his motion under §2255(f)(2); he has not asserted that the Supreme Court has recognized and made retroactively applicable to cases on collateral review a new right under §2255(f)(3). The petitioner did not file his §2255 motion within one year of his judgment becoming final under §2255(f)(1); the court entered judgment on January 22, 2018 and the petitioner filed his original §2255 motion on January 27, 2020—two years after the court entered judgment.

While the §2255 motion is untimely under the statute of limitations, the court has the authority to equitably toll, or pause, the statute of limitations under certain circumstances. Courts rarely grant the "extraordinary" remedy of equitable tolling. Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013) (quoting Simms v. Acevedo, 595 F.3d 774, 781 (7th Cir. 2010)). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." Lombardo v. United States, 860 F.3d 547, 551 (7th Cir. 2017) (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)). "To qualify for equitable tolling, a petitioner must show: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance

12

stood in his way and prevented timely filing." Id. (citing Holland v. Florida, 560 U.S. 631, 649 (2010)). "'Extraordinary circumstances' are present only when an 'external obstacle' beyond the party's control 'stood in [its] way' and caused the delay." Lombardo, 860 F.3d at 552 (quoting Menominee Indian Tribe of Wis. v. United States, __ U.S. __, 136 S. Ct. 750, 756 (2016)). A petitioner seeking equitable tolling "bears the burden of establishing that it is warranted." Obriecht, 727 F.3d at 748 (citing Williams v. Buss, 538 F.3d 683, 685 (7th Cir. 2008)).

The court has noted that the petitioner did not appeal his sentence. He asserts that the reason he did not appeal was because his lawyer told him he had no grounds for relief. Even if this is true, and even if the petitioner's attorney was wrong about whether the petitioner had grounds for appellate relief, "the Supreme Court has made clear that a 'garden variety claim of attorney negligence' or 'excusable neglect' is insufficient" to justify equitable tolling. Obriecht, 727 F.3d at 749 (citing Holland, 130 S. Ct. at 2564-65). While "serious instances of attorney misconduct" may justify equitable tolling, Holland, 130 S. Ct. at 2564-5, the petitioner has not alleged misconduct, serious or otherwise.

Nor has the petitioner identified any extraordinary circumstances that stood in the way of his filing a timely §2255 motion. The facts attached to the plea agreement show that the petitioner was aware of how case agents found the firearm underlying the enhancement. The sentencing enhancement for possession of a weapon appeared in the plea agreement—which the petitioner

signed, acknowledging that he understood its contents—and in the pre-sentence investigation report—to which the petitioner did not object. At the sentencing hearing, the court discussed the enhancement; the petitioner did not object to it. At the very latest, the petitioner was aware of the 2-level sentencing enhancement for the firearm as of the January 11, 2019 sentencing hearing. Yet he did not file his §2255 motion until over two years later and he has not given the court any explanation for why he did not file it sooner.

The petition is not timely and there is no basis for the court to equitably toll the limitation period.

D. Ineffective Assistance of Counsel

Although the statute of limitations bars the §2255 motion, the court briefly comments on the petitioner's argument that his counsel was ineffective. To prevail on a claim of ineffective assistance, a petitioner must show that (1) his attorney's performance fell below objective standards for reasonably effective representation and (2) this deficiency prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 688-94 (1984).

The first prong of the Strickland test requires a petitioner to identify specific acts or omissions of his counsel; the court then considers whether, in light of all of the circumstances, his attorney's performance fell outside the range of "professionally competent assistance." Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009) (citing Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003)). The court's review of an attorney's performance must be "highly deferential" and the court applies a "strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance."
<u>Strickland</u>, 466 U.S. at 689; <u>Wyatt</u>, 574 F.3d at 458. An attorney's trial strategy
is a matter of professional judgment and often turns on facts outside of the
trial record. <u>Strickland</u>, 466 U.S. at 689. A court tempted to become a "Monday
morning quarterback . . . must quell the tendency to call the plays they think
should have been called." <u>Harris v. Reed</u>, 894 F.2d 871, 877 (7th Cir.1990).
The prejudice prong requires a petitioner to show "a reasonable probability
that, but for counsel's unprofessional errors, the result of the proceeding would
have been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is
defined as one that is sufficient to undermine confidence in an outcome."
<u>Adams v. Bertrand</u>, 452 F.3d 428, 435 (7th Cir. 2006) (citing <u>Strickland</u>, 466
U.S. at 694).

  The petitioner argues that his lawyer failed to explain the effect of the
enhancement to the petitioner and failed to object to the sentencing
enhancement for possession of a firearm. The petitioner states that "[t]he
firearm (9 mm pistol) was found in his garage without any [connection] with the
drugs conspiracy." Dkt. No. 6 at 9. He asserts that his garage has "[no]
apparent connection to the drugs trafficking activities." <u>Id.</u> at 10. The petitioner
stresses that if his attorney had investigated, "he would have discovered that
the gun was only stored in the garage." <u>Id.</u> According to the petitioner, "[t]he
presence of the gun was not found in close proximity to drugs proceeds either
to facilitate the charged crime by being available for use to protect drugs
proceeds." <u>Id.</u> at 11.

To the extent the petitioner argues that his lawyer did not adequately explain the plea agreement or the enhancement to the petitioner, the claim lacks merit. Representations made to a court during a plea colloquy are presumptively true. Hurlow v. United States, 726 F.3d 958, 968 (7th Cir. 2013) (quoting United States v. Chavers, 515 F.3d 722, 724 (7th Cir. 2008)). By signing the plea agreement, the petitioner agreed to recommend that the court apply the 2-level increase to the base offense level because he possessed a firearm. The plea agreement and the change-of-plea hearing reflect that the petitioner entered into the plea agreement knowingly, voluntarily and intelligently. The undersigned presided over both the change-of-plea hearing and the sentencing hearing; there was no evidence at either hearing that the petitioner did not enter into the plea agreement voluntarily, knowingly and intelligently. Not only were there Spanish interpreters at both hearings, but the defendant's lawyer also spoke Spanish. The petitioner now claims that his attorney never took the time to explain the enhancement or show that part of the plea agreement to the petitioner. There is no evidence in the record to support that claim, and significant evidence to the contrary.

As for whether the petitioner's attorney was ineffective in failing to object to the enhancement, Guideline 2D1.1(b)(1) says that "[i]f a dangerous weapon (including a firearm) was possessed, increase by **2** levels." https://www.ussc.gov/guidelines/2016-guidelines-manual/2016-chapter-2-d#NaN. The relevant portion of Application Note 11(A) to that guideline states:

> The enhancement for weapon possession in subsection (b)(1) reflects
> the increased danger of violence when drug traffickers possess

weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

Id. The defendant bears the burden of showing that it was "clearly improbable he possessed the weapon in connection with a drug offense." United States v. Morris, 836 F.3d 868, 872 (7th Cir. 2016) (citing United States v. Orozco, 576 F.3d 745, 751 (7th Cir. 2009)).

Count One of the indictment alleged that the petitioner participated in a drug conspiracy that began on or about January 1, 2012 and continued until March 18, 2014. United States v. Soto-Estrada, Case No. 14-cr-71, Dkt. No. 1 at 1. The information to which the defendant pled also alleged that the petitioner participated in a conspiracy that began in January 2012 and ended March 18, 2014. Id. at Dkt. No. 120. The facts in the plea agreement state that between June and August of 2012, a confidential informant had obtained some seventy-five grams of heroin and almost twenty-eight grams of crystal meth from the petitioner and that the petitioner facilitated distribution of kilogram quantities of cocaine. United States v. Soto-Estrada, Case No. 14-cr-71 at Dkt. No. 121, pages 16-19. They state that on March 2, 2016—three and a half years later and just under two years after the conspiracy ended—agents found in the petitioner's garage a 9mm pistol. Id. at 18-19. The presentence report included the petitioner's statement admitting that he knowingly and intentionally participated in distributing heroin in the Milwaukee area. Id. at Dkt. No. 151, ¶¶56-61.

The petitioner cites <u>Mack v. United States</u>, 782 Fed. App'x 789 (11th Cir. 2019) in support of his argument that under these circumstances, his lawyer should have objected to the enhancement. During the search of Mack's residence resulting from an investigation of his drug-dealing activity, officers found a Glock pistol and a 12-guage shotgun. <u>Id.</u> at 790. The presentence report recommended the 2-level enhancement under U.S.S.G. §2D1.1(b)(1), and Mack's attorney did not object. <u>Id.</u> The sentencing court applied the enhancement. <u>Id.</u>

> Mack timely filed a counseled motion to vacate his sentence under 28 U.S.C. § 2255, alleging ineffective assistance of sentencing counsel for failing to object to the dangerous-weapon enhancement. Mack alleged that the grounds for the enhancement were "glaringly tenuous" because the guns were found well after the conspiracy ended and in a place with no apparent connection to his drug-trafficking activities. Further, Mack alleged, had counsel investigated the matter, he would have discovered that the guns belong to his daughter and wife.
>
> The district court denied Mack's § 2255 motion without a hearing and denied a [certificate of appealability]. The court concluded that Mack had not carried his burden of showing that no reasonable counsel would have failed to object to the enhancement. The court therefore did not address whether Mack was prejudiced.

<u>Id.</u> at 790-791.

The Eleventh Circuit concluded that, under that circuit's law, "Mack was entitled to an evidentiary hearing on his § 2255 motion because he pled facts that, if true, show that counsel performed deficiently by failing to object to the § 2D1.1(b)(1) enhancement." <u>Id.</u> at 792.

The appellate court for this court is the Seventh Circuit Court of Appeals. The Seventh Circuit has held that in order for the 2-level enhancement to

apply, the government first must prove by a preponderance of the evidence that the defendant possessed the firearm, then the burden shifts to the defendant to show that it was "clearly improbable" that he possessed the gun in connection with the drug offense. See United States v. Sanchez, 989 F.3d 523, 544 (7th Cir. 2021) (citations omitted). The petitioner's argument amounts to his assertion that it was "clearly improbable" that a gun found in his home garage two years after the conspiracy ended was connected to his drug offenses, and that for that reason, his attorney should have objected to that enhancement.

Whether the petitioner is correct depends on facts that are not before the court. The court agrees with the Mack court that if the petitioner had timely filed his §2255 petition, the court would have needed to hold an evidentiary hearing to obtain more facts about the circumstances surrounding the discovery of the gun in the garage, as well as the reasons that the petitioner's attorney chose not to contest application of the enhancement. But unlike the petitioner in Mack, the petitioner in this case did *not* timely file his §2255 motion and has provided no explanation for why he did not do so.

The court also notes that to prevail on an ineffective assistance of counsel claim, the petitioner would have to demonstrate that his attorney's failure to object to the enhancement (or to preserve his right to object in the plea agreement) prejudiced the petitioner. If the court had not applied the 2-level enhancement, the petitioner's adjusted offense level would have been reduced to 27. Under the 2016 Sentencing Guidelines Manual (the version used to calculate the petitioner's sentence, id. at ¶62), level 27 in criminal

history category I would have resulted in an advisory sentencing range of 70-87 months. https://www.ussc.gov/guidelines/2016-guidelines-manual/2016-chapter-5. The sentence the court imposed—eighty-seven months—is within that range, albeit at the high end. While at the January 11, 2018 sentencing hearing, the court imposed a sentence at the low end of the guideline range and a sentence below both the government's recommendation of 120 months and the defendant's recommendation of 100 months, the court cannot say that it would have done the same had the petitioner's guideline range been 70-87 months, with the low end only ten months higher than the mandatory minimum for the significant amount of drugs the defendant admitted to distributing.

Because the petitioner did not timely file his §2255 motion and has provided no explanation for why he did not do so, however, the court's thoughts on the petitioner's substantive claims are speculative at best.

## III.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2255 Proceedings, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement

to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability, because reasonable jurists could not debate that the petitioner's motion to vacate, set aside or correct his sentence is untimely under 28 U.S.C. §2255(f) and plainly does not entitle him to relief under 28 U.S.C. § 2255(a).

## IV.    Conclusion

The court **ORDERS** that the petitioner's amended motion to vacate, set aside or correct his sentence under 28 U.S.C. §2255 is **DENIED**. Dkt. No. 6.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of April, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**